IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO


NINO JOE SENA,

       Plaintiff,

v.                                             CIV  NO. 04-0808 ACT/DJS

SEARS, ROEBUCK and COMPANY,
RON RICHARD, individually, and as
employee of SEARS, ROEBUCK and
COMPANY, and SHANNA JENSEN,
individually, and as employee of
SEARS, ROEBUCK and COMPANY,

       Defendants.


**MEMORANDUM OPINION AND ORDER**

     THIS MATTER comes before the Court on Defendants' Motion for Summary Judgment on all causes of action raised in the Second Amended Complaint and Defendants' Motion to Strike Affidavits filed by Plaintiff in response to Defendants' Motion for Summary Judgment. [Doc. Nos. 36 and 49].  The Court GRANTS IN PART and DENIES IN PART the Defendants' Motion for Summary Judgment.  Summary Judgment is DENIED on Plaintiff's claims under Title VII of the Civil Rights Acts of 1964, as amended, 42 U.S.C. § 2000(e) (Title VII) and 42 U.S.C. § 1981 (Section 1981) alleging disparate treatment and hostile work environment based on his ethnicity, Hispanic.  Summary Judgment is GRANTED in favor of the Defendants on Plaintiff's claim of retaliation brought under Title VII and Section 1981, Plaintiff's claim of age

discrimination under the Age Discrimination in Employment Act, 29 U.S.C. § 624 (ADEA), and his pendent state cause of action for intentional infliction of emotional distress. The Court DENIES the Defendants' Motion to Strike the Affidavits filed by Plaintiff with his Response to the extent that the Court has relied upon portions of those affidavits in partially denying Defendants' Motion for Summary Judgment.

### SUMMARY JUDGMENT IS DENIED ON THE DISPARATE TREATMENT CLAIM

Defendants argue that because there are no disputed issues of material facts and because they are entitled to judgment as a matter of law, summary judgment should be granted in their favor.  Fed. R. Civ. P. 56; Anderson v. Liberty Lobby, Inc. 447 U.S. 242, 247 (1986).  Under Rule 56(c), summary judgment is appropriate when the court, viewing the record in the light most favorable to the non-moving party, determines that "'there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law.'"  Thrasher v. B & B Chemical Co., 2 F.3d 995, 996 (10th Cir. 1993) (quoting Russillo v. Scarborough, 935 F. 2d 1167, 1170 (10th Cir. 1991).

The movant bears the initial burden of showing "there is an absence of evidence to support the nonmoving party's case."  Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F. 2d 887, 891 (10th Cir. 1991).  Once the movant meets this burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and set forth specific facts showing that there is a genuine issue for trial. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

In a Title VII case or Section 1981 case alleging discrimination based on race[1] or as in this case, ethnicity, the Plaintiff has the burden of proving that he was subjected to unlawful discrimination. Direct evidence of intentional discrimination is usually difficult to obtain so a plaintiff is also allowed to prove his *prima facie* case with circumstantial evidence that could lead a trier of fact to infer that a plaintiff suffered intentional discrimination. McDonnell-Douglas Corporation v. Green, 411 U.S. 792 (1973). Under the familiar McDonnell-Douglas burden shifting formula, the Plaintiff in this case must establish his *prima facie* case by showing that: 1) he is a member of a protected class; 2) that he suffered an adverse employment action; and 2) that such adverse employment action occurred in circumstances giving rise to an inference of discrimination. Hasten v. Burlington N. and Santa Fe. Ry. Co., 296 F. 3d 1177, 1181 (10th Cir. 2002). Defendants argue that Plaintiff cannot establish the basic elements of a *prima facie* case from which a trier of fact could infer discrimination, and that summary judgment should be granted in their favor.[2]

The parties agree that Plaintiff can prove that he is a member of a protected class, persons of Hispanic ethnicity. The parties agree that Plaintiff was the technical manager (tech manager) at Sears in Albuquerque and had held that position since before Defendant Ron Richard (Richard) became his supervisor. The parties also appear to agree, at least for purposes of this summary

---

[1] A section 1981 cause of action must be premised on race discrimination, but race is broadly defined to mean identifiable classes of person based on their ancestry or ethnic characteristics, including persons who are Hispanic. St. Francis College. Al-Khazraji, 481 U.S. 604 (1987). A Title VII claim however may be premised on race or national origin.

[2] Since Defendants' premise for the summary judgment motion is that Plaintiff has not suffered an adverse employment action and therefore has failed to establish a *prima facie* case, they have not addressed the rest of the shifting burdens discussed in McDonnell-Douglas.

judgment motion, that the other Sears tech managers based in Clovis, El Paso and in west Texas had jobs similar to Plaintiff's job. At the time of the incidents complained of, the tech managers in Clovis and west Texas were Anglo. The tech manager in El Paso was Hispanic.

The Defendants argue that Plaintiff cannot establish that he suffered an adverse employment action. Defendants also argue that even if Plaintiff might have suffered some employment action that could have been deemed adverse, he cannot establish that there are any circumstances around that adverse employment action that would allow a trier of fact to infer that the adverse employment action occurred because he was Hispanic.

Plaintiff argues that he has suffered an adverse employment actions in two respects: 1) by having to assume burdensome extra duties and extra hours which were not imposed on the Anglo tech managers (disparate treatment); and 2) having to work under conditions that were so intolerable that he had to take medical leave (hostile environment). Plaintiff also argues that he suffered an adverse employment action when what he considered to be extended medical leave in 2004 was unilaterally changed by Sears to an early retirement (sometimes referred to by the parties as a constructive discharge).

An adverse employment action is defined liberally. Taking a case-by-case approach, the court must examine the unique factors in the particular employment situation before it to determine whether the employee suffered an adverse employment action. Sanchez v. Denver Public Schools, 164 F. 3d 527, 532 (10th Cir. 1998). An employee who suffers a mere inconvenience or a change in job responsibilities does not sufferer an adverse employment action. On the other hand, if an employee suffers an action which causes a significant change in employment status, the employee has suffered an adverse employment action within the meaning

4

of Title VII or Section 1981.  Id.

Plaintiff has presented evidence in the form of affidavits and deposition testimony that shows there are disputed issues of material fact as to whether Plaintiff suffered one or more adverse employment actions.  Plaintiff testified in his deposition that his supervisor, Richard, chewed him out in front of other people, yelling loudly at him every day for the six or seven years that Richard was his supervisor.  Plaintiff also testified that Richard kept him after the weekly tech meetings and chewed him out individually about productivity, called him out of a meeting Plaintiff was conducting to complain about a truck that Plaintiff was not responsible for, targeted him more than the other tech managers, complained about his unit and his technicians, especially his Hispanic technicians, and told him to do menial chores such as change light bulbs and vacuum.  Plaintiff testified that he believed that Richard's treatment of him was because he is Hispanic. The tech manager from Clovis, New Mexico, an Anglo named Terry Cox, testified in his deposition that Richard never yelled or raised his voice when talking to him.

Plaintiff also testified that he worked long hours, six days a week, was on-call often for the entire region and took work home regularly.  He testified that the other tech managers did not have this same workload.  He also testified that he complained of this workload to Richard but that Richard never did anything about the workload.  Plaintiff testified that he believed that his heavier workload was a result of his being Hispanic.

Plaintiff also included an affidavit from Ethel Perry, the retired Parts Manager for Sears. Ms. Perry stated in her affidavit that Richard would disparage the work of Plaintiff and would compare his work to that of the other two Anglo tech managers and that the disparagement occurred on a daily basis.  Ms. Perry also stated that Richard would, on a daily basis, criticize

5

Plaintiff's work and the work of Plaintiff's Hispanic subordinates. She also stated that she noticed a difference in the manner in which Richard treated Hispanic and Anglo subordinates. Finally, she states that Richard was angry, impatient and intolerant toward Plaintiff, would raise his voice at Plaintiff in the presence of other employees on many occasions, that Plaintiff was constantly under pressure from Richard, and that Plaintiff worked long hours, having to take work home on a daily basis. [Exhibit 11, Doc. No. 44].

Defendants have moved to strike this affidavit arguing that Ms. Perry's affidavit contains opinions, unsupported by specific facts or examples, and contains conclusions. They argue that Ms. Perry is not an expert and that her assertions in her affidavit about performance numbers or Richard's motive for treating Plaintiff as he is alleged to have done are not supported by any facts.

First, the Court is not relying on Ms. Perry's assertion about performance numbers or whether Richard was trying to get Plaintiff to quit so he could be replaced by another employee in ruling upon Defendants' Motion for Summary Judgment. The statements contained in Ms. Perry's affidavit on which the Court is relying for purposes of denying the Defendants' Motion for Summary Judgment are the statements summarized above. Those statements constitute admissible evidence and those portions of her affidavit will not be stricken.

Affidavits in support of or in response to a motion for summary judgment must be made on personal knowledge and set forth facts as would be admissible in evidence. Fed. R. Civ. P. 56(e). Federal Rule of Evidence 701 states that a lay witness may testify as to an opinion or inference but that it must be limited to those opinions or inferences which are rationally based on the perception of the witness, helpful to a clear understanding of the witness' testimony or the

6

determination of a fact in issue and not based on knowledge within the purview of an expert.  Ms. Perry states in her affidavit that she worked as the Parts Manager for Sears for approximately 15 to 17 years.  She knew Plaintiff for 29 years and worked in the same buildings for over 20 years, seeing him on a daily basis.  She retired on January 2, 2004, just days before Plaintiff's last day of work on January 9, 2004. She personally witnessed the interactions between Richard and Plaintiff on a daily basis from the time Richard became District Manager and Plaintiff's supervisor.

    Ms. Perry's statements in her affidavit, while stated in terms of conclusions and opinions (angry, impatient, supportive), were based on personal knowledge acquired over a long period of time.  Ms. Perry worked in the same office as Richard and Plaintiff and personally observed the two men on a daily basis.  Ms. Perry's opinion of how Richard interacted with Plaintiff (criticism, disparagement) is based on her own personal observation of the interactions between Richard and Plaintiff.  The fact that her affidavit did not contain specific examples of the criticism, anger or impatience does not make the evidence presented in the affidavit inadmissable at a trial of this matter.  The testimony would be admissible under Fed. R. Evid. 701 as lay opinion testimony.  As Plaintiff has argued, Rule 701 envisions that the adversarial process and cross examination during trial will correct any problems that might arise with lay opinion testimony.

    Plaintiff's deposition testimony, Ms. Perry's affidavit, the deposition testimony of Mr. Cox, and the deposition testimony of Richard show that there are disputed material issues of fact as to whether Defendant Sears and Richard engaged in disparate treatment of Plaintiff and whether this disparate treatment was an adverse employment action as defined by Title VII.  This same evidence also shows that there are disputed material issues of fact whether the circumstances surrounding the alleged disparate treatment of Plaintiff could lead a trier of fact to

infer that the disparate treatment occurred because of Plaintiff's ethnicity.

For the purposes of this summary judgment motion, the Plaintiff has shown that there are disputed material issues of fact as to his *prima facie* case - whether he suffered adverse employment actions when he was allegedly treated differently than Anglo tech managers and whether he suffered these alleged adverse employment actions because he is Hispanic. To defeat a motion for summary judgment in this case on the Title VII claim, the Plaintiff need only show that a material disputed issue of fact exists as to the last two elements of Plaintiff's prima facie case, which he has done.

## SUMMARY JUDGMENT IS DENIED ON THE HOSTILE WORK ENVIRONMENT CLAIM

Plaintiff also asserts that Defendants Sears and Richard created a hostile work environment based on his ethnicity in violation of Title VII. To survive summary judgment on his claim of hostile work environment, Plaintiff must show, under the totality of circumstances: 1) that the harassment was pervasive or severe enough to alter the terms, conditions or privileges of employment; and 2) that the harassment was racial or stemmed from racial animus. Trujillo v. University of Colorado Health Sciences Center, 157 F. 3d 1211 (10th Cir. 1998). In evaluating the first prong of a hostile work environment claim, the Court looks at the frequency of the discriminatory conduct, its severity, whether it was physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interfered with an employee's work performance. Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993). There is both an objective and a subjective element to the determination of whether a particular work environment rises to the level of a hostile work environment. From an objective viewpoint, the conduct must be severe

or pervasive enough that a reasonable person would find the environment hostile or abusive. From a subjective viewpoint, the victim must perceive the work environment as so abusive that it actually altered the conditions of the victim's employment.  Id., at 21-22.  But, as the Tenth Circuit has cautioned, close monitoring and job stress do not constitute a hostile or abusive environment.  Title VII and Section 1981 do "not guarantee a utopian workplace, or even a pleasant one... [P]ersonality conflicts between employees are not the business of the federal courts." Vore v. Indiana Bell Tel. Co., 32 F. 3d 1161, 1164 (7th Cir. 1994).

Whether or not Plaintiff suffered an abusive or hostile work environment based on his ethnicity will ultimately be an issue for the trier of fact to determine.  For purposes of the summary judgment motion on this claim, however, Plaintiff has presented evidence that shows there are disputed issues of fact from which a reasonable person might find that he suffered from an abusive or hostile work environment and might find that the alleged abusive or hostile work environment stemmed from racial animus.  Plaintiff testified that on a daily basis he was criticized, chewed out loudly in front of other people, and yelled at by Richard.  He stated that he never felt like he was doing anything right by Richard and that he felt this way every day.  He felt as though he was targeted and being discriminated against by Richard.  He also testified that on days that Richard was not in Albuquerque, that Richard would call Plaintiff on the phone and chew him out.  He testified that Richard canceled his vacations and expected him to take on additional work.  When Plaintiff complained to Richard about the extra work, Richard's response was, "That's the way it is."  Plaintiff testified that it was his belief that the daily criticisms and chewing out were because he is Hispanic.  He also testified that he believed the extra workload was imposed upon him because he is Hispanic.

9

Plaintiff also presented evidence that from his subjective viewpoint, the alleged abusive environment altered the conditions of his employment to the extent that it affected his physical and mental health.  He testified that the daily chewing outs and criticism caused him to experience both physical and mental health symptoms and that he took a medical leave of absence from September 11, 2003 until November, 2003.  He was under the care of a physician for panic disorder, anxiety, and insomnia during this time.  He returned to work in November, 2003, but left again on January 9, 2004 after an incident between Plaintiff and Richard.

Defendants have pointed to testimony of Plaintiff that he endured his workload, his long hours and his interactions with Richard for six or seven years without complaining.  Defendants also point to Plaintiff's testimony that he took on the extra work and long hours willingly for many years.  Defendants argue that Plaintiff's own testimony shows that there are no material issues of fact as to whether, either from an objective or a subjective viewpoint, the environment at Plaintiff's workplace could be construed to be abusive or hostile under Title VII or Section 1981.  But the Court finds that Plaintiff's testimony, while at times inconsistent, raises enough material issues of fact as to the conditions of the workplace as to preclude summary judgment on the issue of an abusive or hostile work environment.

Plaintiff has also presented the deposition testimony of Plaintiff's wife, Cecilia Sena, to show evidence of racial animus on the part of Richard.  She testified that on one occasion she heard Richard mimic the accent of a Hispanic Sears employee, explaining that "I took that personal, because that was totally out of character." [Exhibit 12, p. 27, Deposition of Cecilia Sena, Doc. No. 44]. She also remembered him stating that the Albuquerque schools were no good because there were too many Hispanics on the school board, that he couldn't live in a certain area

10

because of the school - that there were too many Hispanics - and that he commented that he couldn't believe she was Hispanic because she did not have an accent. [Exhibit 12, pp. 53, 55, and 56]. She also testified that she took Richard's comment about their home, "I can't believe you live in such a beautiful home", as meaning he probably thought they lived in a run-down shack or something. [Exhibit 12, pp. 55-56].

This evidence is sufficient to defeat the Defendants' motion for summary judgment on the Plaintiff's Title VII and Section 1981 claim for discrimination based on a hostile work environment based on race or ethnicity. The evidence shows that there are disputed issues of material fact as to this claim alleging an abusive or hostile work environment that will need to be decided by the trier of fact.

## SECTION 1981 CLAIM AGAINST DEFENDANTS

The two individual Defendants, Richard and Shanna Jensen (Jensen), cannot be sued under Title VII. Plaintiff has, instead, brought a Section 1981 claim against the two individuals alleging discrimination on the basis of race in violation of 42 U.S.C. § 1981. The claim against Richard relies on the same evidence as the claims brought against Defendant Sears in the Title VII claim - the alleged disparate treatment of Plaintiff on the basis of race and the alleged hostile environment. There are disputed issues of fact on both issues so summary judgment is denied as to Richard on the Section 1981 claim.

Jensen was the District Human Resources Manager who worked with Plaintiff and Richard. Plaintiff's claim against Jensen is premised on her alleged disparate treatment of him when Plaintiff complained to her about his increased workload as compared to the Anglo tech

11

managers and her alleged disparate treatment of him when Plaintiff told Jensen about Richard's alleged hostile, racially based treatment of him. Plaintiff claims that Jensen "failed and refused to take any action to prevent, prohibit or curtail" the alleged acts of Richard against Plaintiff. [Second Amended Complaint, ¶17].

Plaintiff testified in his deposition that he complained to Jensen two or three times about his increased workload and the treatment he was receiving from Richard and that he specifically told her he thought these things were happening to him because he was Hispanic. [Exhibit 8, pp. 57-58 Deposition of Plaintiff, Doc. No. 44]. She responded, according to Plaintiff's testimony, with words to the effect of "You know how Ron is." He further testified that she told him she would get back to him but did not. Plaintiff also stated in his affidavit that he had heard Jensen and Richard complaining about "lazy Hispanics". [Exhibit 15, p 2, Affidavit of Nino Joe Sena, Doc. No. 44].

In her deposition Jensen testified that she had never heard from Plaintiff that Richard was continually harassing him. Plaintiff had told her that he felt overwhelmed, was having a difficult time getting everything done and felt pressured because Richard was in the same office as Plaintiff was and that he had higher expectations to live up to. [Exhibit 19, p.128, Deposition of Defendant Jensen, Doc. No. 44].

To establish a prima facie case of disparate treatment by Jensen on his Section 1981 claim, Plaintiff must show that: 1) he is a member of a protected class; 2) that he suffered an adverse employment action by Jensen; and 2) that such adverse employment action occurred in circumstances giving rise to an inference of discrimination. Plaintiff alleges that he did not receive any responses from his complaints to Jensen, his human resource manager, and alleges that these

12

inactions from Jensen constitute an adverse employment action.  He further testifies that in his complaints to Jensen he specifically told her that he was being treated in a certain way by Richard because he is Hispanic.  He argues that since she had this information, it gives rise to the inference that her failure to act on his behalf was because he is Hispanic.

This evidence of a *prima facie* case on the part of Plaintiff against Jensen is sufficient to defeat Jensen's motion for summary judgment on the Section 1981 claim.  The latter two elements of the *prima facie* case are disputed as shown by the deposition and the affidavit testimony.  All Plaintiff needs to show with respect to this claim, to defeat a motion for summary judgment, is that he is able to establish a *prima facie* case against Jensen on the Section 1981 claim, which he has done.

<u>SUMMARY JUDGMENT IS GRANTED ON THE CLAIM OF RETALIATION</u>

Plaintiff also claims that he suffered discrimination in retaliation for an anonymous phone call one of the technicians he supervised allegedly made to a Sears internal complaint line.  He testified that he felt targeted by Richard after Richard confronted him and asked him which one of the technicians had made the phone call.

Title VII prohibits retaliation against an employee who opposed any unlawful employment practices.  <u>42 U.S.C. § 2000e-3(a)</u>.  However, the statute requires that the employee retaliated against must be the one who "opposed" the unlawful employment practice.  The Second Amended Complaint and the deposition testimony of Plaintiff do not establish a claim for retaliation.  Plaintiff did not engage in any protected opposition.  He testified that," I didn't have anything to do with it [the phone call complaining about discrimination], or I didn't know

anything about it, which is the truth." [Exhibit 8, p.121, Deposition of Plaintiff, Doc. No. 44].

There are no disputed issues of fact concerning this claim. Plaintiff does not claim that he engaged in any protected opposition to discrimination and therefore, cannot sustain this claim. Summary judgment is granted in favor of the Defendants on the issue of retaliation under Title VII and Section 1981.

### SUMMARY JUDGMENT IS GRANTED ON THE AGE DISCRIMINATION CLAIM

Plaintiff has alleged in his Second Amended Complaint that Richard treated younger, Anglo employees differently than he treated Plaintiff and claimed that Richard did not closely monitor the work activities of younger, Anglo employees, did not question their authority, did not criticize their work and did not yell at younger, Anglo employees. The parties agree that both Plaintiff and Richard were over the age of 40 at all material times.

Defendants have moved for summary judgment on Plaintiff's claim of discrimination on the basis of age under the ADEA. In accordance with the Local Rules of the District Court of New Mexico, Defendants set out the material facts that they claim were undisputed. While Plaintiff responded to many of the disputed facts he did not dispute any of the facts that Defendants rely upon to show that Plaintiff has not established a case of discrimination based on age.

Plaintiff may not rest on the allegations of his pleading, but must set forth specific facts on this claim showing that there is an issue for trial. Anderson v. Liberty Lobby, Inc., 447 U.S. 242, 248 (1986). Plaintiff has failed to do so in regards to his age discrimination claim. He does not cite to any evidence that would support his allegations of age based discrimination. Therefore,

summary judgment is granted in favor of the Defendants on the ADEA claim.

## SUMMARY JUDGMENT IS GRANTED ON THE CLAIM OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Plaintiff has brought a claim for the state tort of intentional infliction of emotional distress. In New Mexico, to establish a claim for intentional infliction of emotional distress, the plaintiff must show "that the defendants engaged in extreme and outrageous conduct which was done recklessly with the intent to cause severe emotional distress." Silverman v. Progressive Broadcasting, 1998-NMCA-107, ¶31. Extreme and outrageous conduct has been described as so outrageous, so extreme as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community. Dominguez v. Stone, 97 N.M. 211, 214 638 P.2d 423, 426 (Ct. App. 1981). The conduct must cause the plaintiff severe emotional distress and the distress must be reasonable and justified under the circumstances. Id.

The Court must determine, as a matter of law, whether the conduct complained of may reasonably be regarded as so extreme and outrageous that it will permit a plaintiff to recover. If reasonable persons disagree on this determination, the matter must be presented to the trier of fact. Padwa v. Hadley, 1999-NMCA-067, ¶9.

In this case, the evidence presented by the Plaintiff does not support the tort of intentional infliction of emotional distress. Plaintiff alleges that on a daily basis Richard yelled at him in a loud voice, in front of others, disparaged him, criticized him, and chewed him out. Plaintiff testified that Richard belittled him and caused him anxiety, insomnia and distress to the point that he had to take a medical leave of absence from work and seek treatment for a diagnosed panic

15

disorder. Plaintiff further testified that he felt as though Richard targeted him and his technicians, especially the Hispanic technicians.  Richard told Plaintiff on at least twenty occasions to change light bulbs or vacuum common areas although these tasks were not part of his job. Richard gave Plaintiff an annual assessment in front of the other Hispanic tech manager while Plaintiff, Richard and the Hispanic tech manager from El Paso were driving from  Farmington to Albuquerque on a business trip, an incident which Plaintiff found insulting.  Another time Richard pulled all the tools in Plaintiff's unit out onto the floor and left them there so that Plaintiff had to sort through them and put the tools back.  At the time the tool incident occurred Plaintiff did not find it particularly insulting but the next morning, after discussing the incident with co-workers, Plaintiff found the tool incident insulting.  Richard also expected Plaintiff to do extra work and did not adjust his workload despite Plaintiff's complaints to him.

Even if all of these allegations were found to be true and in accordance with Plaintiff's testimony, Richard's conduct toward Plaintiff does not reach, as a matter of law, the level of extreme and outrageous conduct that goes beyond the bounds of decency such that it would be regarded as atrocious and intolerable in the workplace.  See, <u>Daemi v. Church's Fried Chicken, Inc.</u>, 931 F. 2d 1379 (10th Cir. 1991) (applying Oklahoma law of intentional infliction of emotional distress, based on the <u>Restatement 2d on Torts</u> as in New Mexico, but finding no cause of action despite employer calling him derogatory names based on his ethnicity, Iranian).  These allegations may be sufficient to support a claim for disparate treatment or a hostile work environment based on ethnicity, but they are not enough to support a claim for intentional infliction of emotion distress.  Summary judgment is granted in favor of the Defendants on the claim on intentional infliction of emotional distress.

## CONCLUSION

Summary Judgment is DENIED on the Title VII claims against Defendant Sears based on alleged disparate treatment of Plaintiff because of his ethnicity and on the alleged hostile environment. Summary Judgment is also DENIED on the Section 1981 claims brought against the individual Defendants Richard and Jensen alleging disparate treatment and/or hostile environment.

Summary Judgment is GRANTED on the Title VII and the Section 1981 claims alleging retaliation. Summary Judgment is GRANTED on the age discrimination claim brought under the ADEA. Lastly, Summary Judgment is GRANTED on the state tort claim of intentional infliction of emotional distress.

_____
ALAN C. TORGERSON
UNITED STATES MAGISTRATE JUDGE
PRESIDING JUDGE